IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

MEDITE CORPORATION, a Delaware
corporation,

        Plaintiff,

v.                                                                      No. CIV 96-0929 BB/RLP

PUBLIC SERVICE COMPANY OF NEW
MEXICO, a New Mexico corporation,

        Defendant.

## **MEMORANDUM OPINION**

THIS MATTER comes before the Court on Plaintiff's Motion for Summary Judgment on the Counterclaim of Defendant Public Service Company of New Mexico (Doc. 73, filed October 29, 1997). The Court having reviewed the submissions of the parties and the relevant law and entertained oral argument, finds that the motion will be DENIED.

Plaintiff's motion raised two main arguments in support of Plaintiff's attempt to obtain dismissal of the counterclaim. First, Plaintiff maintained the purported liquidated damages clause contained in the electric service agreement ("ESA") was in reality an unenforceable penalty clause that bore no relationship to Defendant's actual damages. Second, Plaintiff argued that under the plain language of the ESA, the minimum-charge provision that is the basis for Defendant's counterclaim expired after the initial five-year period of the ESA passed. At the hearing on Plaintiff's motion, counsel for Plaintiff conceded (and the Court agrees) that there are factual issues to be resolved with respect to the first argument. For this reason, Plaintiff now presses only the contractual-interpretation argument, and that is the argument the Court addresses in this

opinion. Under the express terms of § 18.1 of the ESA, New Mexico law governs the interpretation of the agreement.

In a diversity case such as this one, the Court applies state law to the substantive questions presented. However, the propriety of granting or denying the motion for summary judgment is determined using federal standards. See Perlmutter v. U.S. Gypsum Co., 54 F.3d 659, 662 (10th Cir. 1995). Summary judgment is properly granted only when there is no genuine issue of material fact in dispute. Id.

In New Mexico, a court interpreting a contract is required to examine the language of the contract as well as extrinsic evidence to determine whether the contract is ambiguous. See, e.g., Strata Production v. Mercury Exploration, 916 P.2d 822, 830 (N.M. 1996). The ultimate goal in interpreting a contract is to discern the intentions of the parties at the time they drafted the contract. Id. The court must consider the contract as a whole, rather than selected portions, in attempting to determine the parties' intent. Medina v. Sunstate Realty, Inc., 889 P.2d 171, 173 (1995).

The Court finds that the language of the ESA is ambiguous on the issue in question, and that genuine issues of fact remain concerning the circumstances surrounding the ESA and the parties' intentions with respect to the minimum-charge provision. The question that must be answered in this case is whether the minimum-charge provision remained in effect after the initial five-year term established by the ESA expired. One reasonable interpretation of § 1.2 of the ESA would be that it was renewed along with the entire agreement, pursuant to the provisions of § 1.1. The latter states that after the initial term, "this Agreement" shall be automatically renewed from year to year. Plaintiff, however, relies on the fact that § 1.2 specifically states the CCS minimum

monthly charge must be paid if Plaintiff discontinues service prior to the end of the initial five-year term.  This reference to the five-year term, according to Plaintiff, means that after the initial term § 1.2 has no further effect, Defendant is limited to its actual damages, and Defendant may not collect the CCS minimum charge.

While Plaintiff's view is also a reasonable interpretation of the ESA, it is not so clear as to be conclusive.  This is especially so when the ESA is viewed as a whole.  There is another provision in the ESA, § 7.3, which is relevant to the CCS minimum-charge issue.  That section states that the CCS charge "represents a minimum monthly charge irrespective of actual consumption."  Even if § 1.2 of the ESA is not renewed with the rest of the Agreement, it can be argued that this portion of the ESA, denominating a minimum monthly charge that would appear to apply as long as the ESA remains in effect, is renewed.  The conflicts within the ESA itself are thus apparent, and prevent summary judgment as to the meaning of the minimum-monthly-charge requirement.

Similarly, the circumstances surrounding the inclusion of the minimum-monthly-charge provision are not clear, and those circumstances can therefore not be used to support summary judgment on the issue.  Defendant has filed the affidavit of Jeffrey Neal, the lead negotiator for PNM with respect to the ESA.  Mr. Neal states that the early-termination provision of the ESA, calling for payment of the CCS minimum monthly charge upon termination of the ESA before the end of the initial or renewed contract period, was one of the key features of the agreement as far as PNM was concerned.  This affidavit alone would appear to raise an issue of fact with respect to the parties' intentions as to whether the monthly-charge provision would expire or be renewed with the rest of the ESA.  In addition, little or no evidence has been presented to the Court

concerning the actual purpose of the minimum-monthly-charge provision, whether that purpose was solely to allow PNM to recover the initial costs of the agreement or to provide PNM with a transition period to find other buyers for the electricity. Without such extrinsic evidence, the Court cannot determine the meaning of the contract in light of the intentions of the parties.

**Conclusion**

Based on the foregoing, the Court will DENY Plaintiff's motion for summary judgment on Defendant's counterclaim.

An Order in accordance with this Memorandum Opinion will issue.

Dated this 30th day of March, 1998.

_____
BRUCE D. BLACK
United States District Judge